**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | |
|---|---|
| **IN THE MATTER OF THE SEIZURE OF:** | **22-SW-2098DPR** |
| **A 1952 TOPPS JACKIE ROBINSON BASEBALL CARD** | <u>**Filed Under Seal**</u> |

**AFFIDAVIT IN SUPPORT OF
<u>AN APPLICATION FOR A SEIZURE WARRANT</u>**

I, Karl E. Bolte, Special Agent with the Internal Revenue Service – Criminal Investigation, being first duly sworn, states as follows:

1.      I make this affidavit in support of an application for a seizure warrant for property illegally gained by **John Michael Felts ("Felts")**, and property used in committing the following federal crimes: 18 U.S.C. § 1014 (making a false statement on a loan document), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1344 (bank fraud), 18 U.S.C. § 1349 (conspiracy to commit wire or bank fraud), 18 U.S.C. § 1956 (money laundering), and 18 U.S.C. § 1957 (money laundering), specifically:

    a.      1952 Topps Jackie Robinson baseball card.

**<u>INTRODUCTION</u>**

2.      I am a Special Agent with the Internal Revenue Service – Criminal Investigation ("IRS-CI") and have been employed in this capacity since April 2005.  Prior to that, I worked in Collection for the Internal Revenue Service ("IRS") and as an auditor for a public accounting firm.  As a Special Agent, my training, responsibilities, and experience include:

a. Extensive training in conducting criminal and financial investigations that include analyzing books and records of individuals and/or businesses, which may be evidence of criminal activity;

b. Conducting criminal investigations of individuals and businesses involving potential violations of Title 26 (Internal Revenue Code) and related financial crimes in Titles 18 and 31 of the United States Code, which includes experience in applying for and executing numerous search and seizure warrants through such investigations;

c. Investigating cases utilizing various methods to obtain evidence, especially circumstantial or indirect evidence, when direct evidence is limited. I have participated in various types of financial investigations including income tax evasion, aiding and assisting in the preparation of false returns, wire fraud, bank fraud, contraband cigarette trafficking, and various forms of money laundering, which involve analyzing various business records (i.e., bank records, invoices, contracts, loan applications, agreements, tax returns, journals, ledgers, and other documents of financial transactions); and

d. Investigating evidence used as probable cause to seize personal property and currency, from individuals and financial institutions, which constituted proceeds from specified unlawful proceeds. Related to this, I have also received training and experience in the application and execution of seizure warrants.

2

## BACKGROUND

3.     IRS-CI and the United States Small Business Administration, Office of Inspector General ("SBA-OIG") have been investigating **John Michael Felts ("Felts"), DOB: 02/15/1975,** and other related individuals and entities for potential violations of wire fraud (18 U.S.C. § 1343), bank fraud (18 U.S.C. § 1344), false statement on a loan document (18 U.S.C. § 1014), conspiracy to commit bank/wire fraud (18 U.S.C. § 1349), and money laundering (18 U.S.C. §§ 1956 & 1957), among other charges, through a scheme or artifice to complete false and fraudulent applications for Paycheck Protection Program ("PPP") loans with qualified lenders.  This investigation focuses on companies under the ownership or control of **Felts**, which include Taco Habitat GMP LLC, Taco Habitat Branson LLC, Habitat Restaurant Holdings LLC, Cluck 2 LLC, E-8 Productions LLC, Super's Entertainment LLC, Diagnostic Equipment Inc., Sonic Werx LLC, Restaurant Franchise Holdings LLC, and Concept Pro LLC. The other individuals include Craig Davis ("Davis"), DOB: 10/24/1974, and Breann Ponticello ("Ponticello"), DOB: 12/12/1987, who have financial or other connections to **Felts**.  Davis lived in San Antonio, Texas, and owns Bright Vanguard LLC, which has exchanged numerous large wire transfers with **Felts** and his companies over the last few years.

4.     I have participated in the investigation of the offenses set forth in this affidavit.  The facts and information contained in this affidavit are based upon my personal knowledge, information obtained from federal, state, or local officials (who may have either direct or hearsay knowledge of the statement), investigative information obtained from interviews, surveillance, and analysis of reports, records, and intelligence.   All observations and information referenced in this affidavit that were not made by me were

relayed to me by the person who made such observations or who obtained or analyzed such information. Unless specifically indicated, all conversations and statements described in this affidavit are related in substance and in part only and are not intended to be a verbatim recitation of such statements.

5.     This affidavit does not set forth each and every fact learned during the course of this investigation. It sets forth only those facts which establish probable cause to seize the assets as set forth in this affidavit, pursuant to a seizure warrant.

## STATUTES

6.     Title 18, United States Code, Section 1014, makes it a crime to knowingly make any false statement for the purpose of influencing in any way the action of a financial institution as defined in that section.

7.     Title 18, United States Code, Section 1343, makes it a crime for anyone who has devised any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, to transmit or cause to be transmitted by means of wire, radio, or television communications in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice.

8.     Title 18, United States Code, Section 1344, makes it a crime to knowingly execute a scheme or artifice to defraud a financial institution or to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution by means of false or fraudulent pretenses, representations, or promises.

9.     Title 18, United States Code, Section 1349, makes it a crime to attempt or conspire to commit several offenses, including wire fraud under section 1343 and bank fraud under section 1344, the commission of which was the object of the attempt or conspiracy.

10.     Title 18, United States Code, Section 1956, makes it a crime to knowingly conduct or attempt to conduct a financial transaction that involves proceeds of specified unlawful activity with the intent to promote the carrying on of specified unlawful activity or knowing that the transaction was designed to conceal the nature, location, or source of the proceeds or to avoid a transaction reporting requirement.

11.     Title 18, United States Code, Section 1957, makes it a crime to knowingly engage or attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and that is derived from specified unlawful activity.

## FORFEITURE PROVISIONS

12.     The proceeds of making a false statement for the purpose of influencing in any way the action of a financial institution, wire fraud, and bank fraud are subject to forfeiture under both civil and criminal forfeiture authorities.  Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to making a false statement for the purpose of influencing in any way the action of a financial institution, wire fraud, bank fraud, or conspiracy to commit wire or bank fraud is subject to civil forfeiture.  Pursuant to 18 U.S.C. § 982(a)(2)(A), any property constituting, or derived from, proceeds obtained from making a false statement for the purpose of influencing in any way the action of a financial institution, wire fraud, bank fraud, or conspiracy to commit wire or bank fraud is subject to criminal forfeiture.

5

13.     The property involved in money laundering under 18 U.S.C. §§ 1956 and 1957 is subject to forfeiture under both civil and criminal forfeiture authorities.  Under 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction, in violation of section 1956, 1957, or 1960, or any property traceable to such property, is subject to civil forfeiture.  Pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, which is involved in violations of section 1956, 1957, or 1960, is subject to criminal forfeiture.  The "government need not trace each dollar to a criminal source to prove a violation of 18 U.S.C. § 1957."  *United States v. Mooney*, 401 F.3d 940, 946-47 (8th Cir. 2005).

14.     Forfeiture pursuant to these statutes applies to more than just the proceeds of the crime.  These forfeitures encompass all property "involved in" the crime, which can include untainted funds that are comingled with tainted funds derived from illicit sources. *United States v. Nicolo*, 597 F. Supp. 2d 342, 355 (W.D.N.Y. 2009) (if funds in a commingled bank account are subject to forfeiture as property involved in money laundering, then vehicle purchased with the commingled funds is forfeitable as property traceable to such property); *United States v. Prevezon Holdings, Ltd.,* 251 F. Supp. 3d 684 (S.D.N.Y. 2017) (if clean money is used to facilitate the laundering of dirty money in a comingled account, the clean money becomes subject to forfeiture, and property traceable to the now forfeitable clean money is forfeitable as well); *United States v. Guerrero,* 2021 WL 2550154, *9 (N.D. Ill. June 22, 2021) (it was irrelevant that the forfeited property was traceable only in part to the fraud proceeds; any property commingled with the fraud proceeds was forfeitable as property involved in the money laundering, and the forfeited

property was traceable to it as well as to the fraud proceeds), aff'd — F.4th —, 2022 WL 2185328 (7th Cir. Jun. 17, 2022);

15. This application seeks a seizure warrant under both civil and criminal authority because the property to be seized could be placed beyond process if not seized by warrant.

16. Pursuant to 18 U.S.C. § 981(b), property subject to civil forfeiture may be seized by a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed," and may be executed "in any district in which the property is found," if there is probable cause to believe the property is subject to forfeiture. Pursuant to 28 U.S.C. § 1355(b)(1)(A), a civil forfeiture action may be brought in any district where "acts or omissions giving rise to the forfeiture occurred." As detailed in this affidavit, acts or omissions of the fraud and money laundering scheme under investigation occurred in the Western District of Missouri.

17. Pursuant to 18 U.S.C. § 982(b), criminal forfeiture procedures are governed by 21 U.S.C. § 853. Section 853(f) provides for the authority for the issuance of a seizure warrant for property subject to criminal forfeiture.

18. The issuance of this seizure warrant is authorized under 21 U.S.C. § 853(f) and 18 U.S.C. § 982(b)(1) for criminal forfeiture; and 18 U.S.C. §§ 981(b) and 984 for civil forfeiture. Notwithstanding the provisions of Rule 41(b) of the Federal Rules of Criminal Procedure, the issuance of this seizure warrant in this district is appropriate under 18 U.S.C. § 981(b)(3), 21 U.S.C. § 853(1), and 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in the Western District of Missouri.

19. There is probable cause to believe that the assets identified for seizure:

a.     Are involved in transactions in violation of 18 U.S.C. §§ 1956 or 1957, or property traceable to such property; or

b.     Constitute or are derived from proceeds traceable to violations of specified unlawful activities, which include 18 U.S.C. § 1014, 18 U.S.C. § 1343, and 18 U.S.C. § 1344.

20.     In a forfeiture case, the government has the initial burden of showing probable cause to believe that a substantial connection exists between the property and the criminal activity. *United States v. One 1987 Mercedes Benz 300E*, 820 F. Supp. 248, 251 (E.D. Va. 1993). I am further advised that "probable cause" simply means a reasonable ground for belief that goes beyond mere suspicion but need not amount to prima facie proof. *Id.* at 251-52. This standard requires courts to make a practical, common-sense decision whether, given all the circumstances, fair probability exists that the property to be forfeited was involved in or the subject of a transaction violating forfeiture statutes. *Id. See also United States v. Thomas*, 913 F.2d 1111, 1114 (4th Cir. 1990).

### CARES ACT, PPP LOANS & EIDL

21.     The United States Small Business Administration ("SBA") is an executive branch agency of the United States that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enables and provides for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

22.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in or around March 2020 and created specifically to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through the PPP.  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

23.     On or about December 27, 2021, the Consolidated Appropriations Act of 2021 was signed into law.  The Coronavirus Response and Relief Supplemental Appropriations Act of 2021 is part of the Consolidated Appropriations Act.  This provided approximately $284 billion in additional PPP funds and reopened the PPP application process, including requests from applicants for a second draw of monies.  On or about March 30, 2021, the PPP Extension Act of 2021 was signed into law, which extended the PPP application deadline to May 31, 2021.

24.     In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application (SBA Forms 2483 and 2484), signed by an authorized representative of the business, to a lender that was participating in the PPP.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. One affirmative certification required the business to certify that it was in operation on February 15, 2020, and had employees for whom it paid salaries.  Further, in the PPP loan application, the applicant (through its authorized representative) was required to state, among other things, its: (a) average monthly payroll expenses; and (b) number of

9

employees. The figures provided were then used to calculate the amount of money the small business was eligible to receive under the PPP. Finally, the applicant was required to provide documentation showing its payroll expenses.

25. The PPP loan application was received and processed, in the first instance, by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which are ultimately guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, would be transmitted by the lender to the SBA in the course of processing the loan application.

26. Pursuant to the PPP, loan proceeds were required to be only used by the business on certain permissible expenses, such as payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these permitted expense items within a designated period of time after receiving the proceeds and used at least 60% of the PPP loan amount on payroll expenses and no more than 40% on non-payroll expenses, such as rent, mortgage interest, and utilities.[1] Upon a borrower applying for a second round, or "draw," of PPP loan proceeds, through which they certified the first round of funds were used in accordance with the PPP terms and consistent with their application, and upon approval, the first PPP loan is forgiven. Borrowers also certify that the funds from the second draw PPP Loan will be used for eligible expenses.

---

[1]Initially the minimum percentage to be used on payroll was 75%, but it was lowered to 60% in subsequent legislation signed into law.

27.     Per the legislation, payroll costs excludes any employee compensation in excess of $100,000 on an annualized basis, as prorated for the period during which the payments are made or the obligation to make is incurred.  The initial prorated period was March 1, 2020, through June 30, 2020, which capped compensation for any single employee at $33,333.

28.     Economic Injury Disaster Loans ("EIDL") are direct loans from the SBA without the involvement of private lenders.  Borrowers apply online and the loan is meant to provide small business with working capital for fixed debts (such as rent or utilities), payroll, accounts payable, and other bills resulting from the pandemic.  The maximum loan amount was $150,000, which was increased to $500,000 on April 6, 2021.  Borrowers have up to 30 years to repay and can receive no more than $2 million for all affiliated businesses.  Applicants could also receive a Disaster Loan Emergency Advance ("Grant") up to $10,000 ($1,000 per employee up to $10,000).

29.     Based on my training and experience, I use the following technical term to convey the following meaning:

        a.      IP Address: The Internet Protocol address (or simply "IP address") is a unique identifier used by computers on the Internet.  Internet Protocol version 4 (or simply "IPv4") is an original version of IP addresses that is entirely numeric.  An IPv4 IP address looks like a series of four numbers, each in the range of 0 to 255, separated by periods (e.g., 99.45.215.62).  Every computer or device attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination.  Most Internet Service Providers control a range of IP addresses.  Some

11

computers have static—that is, long-term—addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

## **PROBABLE CAUSE**

30.     Upon review of records obtained through subpoenas, I learned that **Felts** applied for nearly a dozen PPP loans using several different companies under his ownership or control. Most of these companies did not have employees and were not in operation at the time of application, despite **Felts** stating that the companies did have employees and were operating at the time. In fact, while some had addresses, a few of them had no buildings from which to operate. Further, financial records revealed that **Felts** used the PPP proceeds in violation of the terms of the program, including using many of the proceeds for personal, non-business-related purposes. Many of the electronic loan applications and bank transactions originated from **Felts'** residence at 1268 South Jones Spring Lane, Springfield, Missouri 65809 ("**PREMISES**"), a location within the Western District of Missouri.

31.     In addition, subpoenaed records revealed that **Felts** also applied for more than a dozen PPP loans using synthesized or fabricated identities and companies under his control. It appears that he did so with the assistance of Davis and Ponticello. Experian, the credit reporting agency, has written about synthetic identity fraud and describes it as follows:

> "Synthetic identity fraud occurs when criminals create new identities by mixing real and fictitious information. Once created, fraudsters will use their synthetic identities to apply for credit. They employ a well-researched process to accumulate access to credit. These criminals often know which lenders have more liberal

12

identity verification policies that will forgive data discrepancies and extend credit to people who appear to be new or emerging customers."[2]

**Felts' First Round of PPP Applications**

*Taco Habitat GMP LLC*

32. In or about April 2020, **Felts** applied for the first PPP loan for his company Taco Habitat GMP LLC, with OakStar Bank. The address for Taco Habitat GMP LLC on the application is "3325 S. Glenstone Ave, Springfield, MO." That is currently the location of Taco Habitat at Glenstone Marketplace, hence the "GMP" in the company name. I observed that this location was under construction for most of 2020 and opened for business later in the year. According to news reports, Taco Habitat at Glenstone Marketplace did not open for business until or about November of 2020.[3] This location is within the Western District of Missouri.

33. **Felts** provided the following information as part of the PPP application process for Taco Habitat GMP LLC:

    a. **Felts** signed the initial application dated on or about April 2, 2020;

    b. **Felts** is the 100% owner;

    c. **Felts'** address is "1268 S. Jones Spring Lane, Springfield, MO" (**PREMISES**)[4];

    d. **Felts'** email address is diversifiedmusic@aol.com;

---

[2]https://www.experian.com/blogs/insights/2021/01/solving-fraud-problem-synthetic-identity-fraud/.

[3]https://sbj.net/stories/taco-habitat-opens-in-springfield,71719.

[4]1268 South Jones Spring Lane, Springfield, Missouri 65809 is a location within the Western District of Missouri.

e.      There are two employees;

f.      The average monthly payroll is $11,538.45;

g.      The purpose of the loan is for payroll, rent/mortgage, and utilities[5];

h.      **Felts** certified that the loan information provided was materially true and accurate; and

i.      **Felts** directed the $28,846.12 in loan proceeds that were awarded to be deposited in the Taco Habitat GMP LLC account number ending 6792 at Southern Bank.

34.      The email address of diversifiedmusic@aol.com belongs to Oath Inc. (formerly known as AOL). According to Oath Inc. records, Michael Felts is the subscriber for this email account and the recovery phone number is 305-746-2515.

35.      The telephone number 305-746-2515 has service through Verizon. The subscriber records from Verizon show that Nell Felts is the subscriber. Nell Felts passed away in 2016 and is the grandmother of **Felts**.

36.      **Felts'** IP address of 99.45.215.62 was captured when he electronically signed PPP loan documents sent to the same email address **Felts** provided above. IP address 99.45.215.62 belongs to AT&T and subscriber information reveals that, at the time of capture, this IP address was tied to Internet service at the **PREMISES** under the name of "Jennifer Obert," who is **Felts'** wife. "Obert" is her maiden name, and she currently goes by "Jennifer Felts".

---

[5]SBA Form 2483 (PPP Borrower Application Form) asks borrowers to identify the purpose of the loan as Payroll, Lease/Mortgage Interest, Utilities, and Other (with explanation).

14

37.     Based on my training and experience, individuals commonly store records at their business offices and at their private residences, especially in cases like this one where the applications were sent from a private residence.

38.     Per IRS records, Taco Habitat GMP LLC has not filed any Forms 941 (Employment Tax Returns) for any quarters in 2019 or 2020.  Nor does Missouri Division of Employment Security ("MO-DES") have any Quarterly Contribution and Wage Report (MODES-4) filings for the same quarters.  This would indicate that the company did not have any employees.

39.     **Felts** used the PPP loan proceeds deposited to the Southern Bank account to fund the following:

a.     On or about April 21, 2020, **Felts** withdrew $17,000 in PPP proceeds to fund two cashier's checks to Glenstone Marketplace, presumably for rent.

**Felts** eventually received loan forgiveness for the $28,846 in PPP proceeds.  According to the terms of PPP loan forgiveness, in order to receive forgiveness, a business most not use more than 40% of the PPP loan proceeds for non-payroll expenses.  As evidenced above, **Felts** used more than 40% of the PPP loan proceeds for non-payroll expenses.

*E-8 Productions LLC*

40.     In or about April 2020, **Felts** applied for a PPP loan for E-8 Productions LLC, with Celtic Bank.  The address of E-8 Productions LLC provided on the application is 2802 Flintrock Trace, Suite 201, Austin, Texas.  This address is a virtual office that will rent an address (as a mail handling service) and an executive conference room.[6]  As a part

---

[6]https://www.flintrocksuites.com/virtual-office.

of the PPP application process, **Felts** provided documents filed with the Missouri Secretary of State's Office ("Missouri SOS") that showed the company was registered in the state of Missouri.

41.     **Felts** provided the following information as part of the PPP application process for E-8 Productions LLC:

a.      **Felts** physically signed the initial application dated April 15, 2020;

b.      **Felts** is the 100% owner of E-8 Productions LLC;

c.      **Felts'** address is 211 Catskill Road, Walnut Shade, Missouri;

d.      **Felts'** email address is e8production@gmail.com;

e.      **Felts'** phone number is 417-986-7007;

f.      There are 32 employees;

g.      The average monthly payroll is $180,708.33;

h.      The purpose of the loan is for payroll and rent/mortgage;

i.      **Felts** certified that the loan information provided was materially true and accurate; and

j.      **Felts** directed the loan proceeds of $451,770.83 that were awarded to be deposited in the E-8 Productions LLC account number ending 6735 at Southern Bank.

42.     **Felts** shares the same first and last name as his father, John A. Felts.  Taney County, Missouri, public records show that **Felts'** parents own 211 Catskill Road, Walnut Shade, Missouri, a location in the Western District of Missouri.  Despite having his own residences in Springfield at the **PREMISES** and the adjoining residence at 1224 South

16

Jones Spring Lane, Springfield, Missouri, **Felts** frequently uses his parents' home address on PPP loan applications.

43.     **Felts** submitted copies of Forms 941 (Employer's Quarterly Federal Tax Return) for E-8 Productions LLC for all quarters in 2019 as a part of this PPP application. Each of the returns shows 32 employees, which matches the application. The first quarter return total wages ($542,125) approximately match the average monthly payroll amount on the application.

44.     Per IRS records, E-8 Productions LLC, has not filed any Forms 941 for any quarters in 2019 or 2020. Nor does MO-DES have any Quarterly Contribution and Wage Report filings for the same quarters. This would indicate that the company did not have any employees.

45.     An IP address of 33.129.65.185 was captured on or about April 28, 2020, upon loan documents being electronically signed after they were sent to the email address above. This IP address belongs to Charter and subscriber information reveals that, at the time of capture, this IP address was tied to Internet service at 1900 East Ocean Boulevard, Apartment 1401, Long Beach, California, under the name of Breann Ponpicello with bounceid2@charter.net as the username and 702-882-2602 as the telephone number. This telephone number is used on the website for BP Enterprise.[7]  BP Enterprise LLC was registered in the state of California to Ponticello. I believe the subscriber name is a typographical error, and the last name is Ponticello.

46.     Telephone number 417-986-7007 belongs to Phone.com and service for this number was initiated by **Felts** through his Phone.com account. **Felts** registered his account

---

[7] www.bpenterprise.com/about.

using the email address of diversifiedmusic@aol.com, which is the same email address **Felts** used on the PPP loan application for Taco Habitat GMP LLC and other applications.

47.     On or about March 6, 2019, **Felts**, as the sole signer, opened account number ending 6735 in the name of E-8 Productions LLC at Southern Bank. Aside from the PPP loan proceeds, the only other material deposit to this account in 2020 was a $149,900 EIDL from SBA. **Felts** submitted the EIDL Application on or about June 3, 2020. As with the PPP loan, **Felts** provided the same false number of employees (32) on the EIDL application. Additionally, he provided amounts for gross revenue ($4,965,000) and cost of goods sold ($264,500) when the business was not in operation.

48.     **Felts** used the PPP and EIDL loan proceeds deposited to the Southern Bank account to fund the following:

a.      On or about April 29, 2020, **Felts** wrote check number 2100 in the amount of $17,500 to EWP LLC. EWP LLC owns the property at 4406 South Campbell, Springfield, Missouri, which is the location of Cluck 2 LLC d/b/a "Hot Cluckers"). Springfield, Missouri, is a location within the Western District of Missouri;

b.      On or about April 30, 2020, **Felts** transferred $25,474.84 to loan number 669613 with Southern Bank, to pay off part of a loan and release the **PREMISES** as collateral;

c.      On or about May 1, 2020, **Felts** wrote check 2101 in the amount of $69,555.92 to Plaza Lexus for the purchase of a vehicle;

i.      Plaza Lexus is located in Creve Coeur, Missouri, and its records show that, on or about May 1, 2020, a 2020 Lexus RX350

18

(VIN:2T2HZMDA4LC241116) was sold to Vi Annette Obert. **Felts** was also listed as a customer on some of the paperwork and check number 2101 above paid for the vehicle. The purchase price included the Lexus and payoff of a lien on a trade-in vehicle owned by Davis.[8] Jennifer Felts is listed as the Title on Death beneficiary on the title for this vehicle and, again, her maiden name is Obert. I have personally observed this vehicle at the address of 5279 South 60th Road, Walnut Grove, Missouri 65770, a location within the Western District of Missouri. The funds used through check number 2101 to obtain this vehicle represent funds attributable to fraud.

d.     On or about May 4, 2020, **Felts** sent a wire in the amount of $66,700 to the Bright Vanguard LLC[9] account number ending in 0329 at JP Morgan Chase Bank NA;

e.     Between or about April 30 and May 6, 2020, **Felts** transferred approximately $64,700 to his personal account number ending in 5125 at Southern Bank;

---

[8]Plaza Lexus gave $35,000 for a trade-in of a 2018 Land Rover Range Rover (VIN SALYB2RV1JA716367) which was previously registered to Craig Davis in Texas. The payoff amount was $44,897.92 for the Land Rover.

[9]Felts and the companies under his control have been exchanging large wires with Bright Vanguard LLC since at least 2018. Bright Vanguard LLC is a registered company in the state of Texas and its registered agent is listed as Craig Davis.

19

f. During May 2020, **Felts** transferred approximately $83,100 to account number ending in 4904 in the name of Bourbon and Beale LLC[10] at Southern Bank; and

g. On or about June 16, 2020, **Felts** sent a wire in the amount of $13,000 to the Anaujiram Group LLC[11] account number ending in 7023 at Bank of America.

This shows that **Felts** used PPP loan proceeds for expenses that had nothing to do with the operation of the listed business. These transactions demonstrate that probable cause exists to believe that **Felts** also violated 18 U.S.C. § 1957 in each instance and 18 U.S.C. § 1956 in at least subparagraphs c. and e.

*Habitat Restaurant Holdings LLC*

49. In or about April 2020, **Felts** applied for a PPP loan for Habitat Restaurant Holdings LLC, with Incredible Bank. The address of Habitat Restaurant Holdings LLC, provided on the application is 600 West Main Street, Branson, Missouri, which is a location in the Western District of Missouri. **Felts** planned to build another restaurant branded as Taco Habitat at this location, but it is still not finished. Based on designs submitted for this Taco Habitat, which I observed, the City of Branson had not approved the design of a fire suppression (sprinkler) system until 2021. As of January 31, 2022, the City of Branson

---

[10]Bourbon & Beale LLC is a restaurant owned by **Felts** as is evidenced by bank records, news reports, and filings with the Missouri SOS.

[11]Anaujiram is marijuana spelled backwards. Anaujiram Group LLC was incorporated in the state of Missouri, despite the incorporation records listing the location of its registered agent in the state of California. The business was incorporated at an address that is currently owned by Jennifer Felts under her maiden name and was her former residence.

had not issued a Certificate of Occupancy (or similar document) or a business license to operate at this location.

50. **Felts** provided the following information as part of the PPP application process for Habitat Restaurant Holdings LLC:

    a. **Felts** physically signed the initial application dated April 27, 2020;

    b. **Felts** is the 100% owner of Habitat Restaurant Holdings LLC;

    c. **Felts'** address is 211 Catskill Road, Walnut Shade, Missouri;

    d. There are 19 employees;

    e. The average monthly payroll is $130,810.90;

    f. The purpose of the loan is for payroll;

    g. **Felts** certified that the loan information provided was materially true and accurate; and

    h. **Felts** directed the loan proceeds of $327,027.25 that were awarded to be deposited in account number ending in 6318 in the name of Habitat Restaurant Holdings LLC at Incredible Bank.

51. **Felts'** IP address of 99.45.215.62 was captured when he electronically signed loan documents sent to his business email address, info@habitatrestaurants.com. As was described above, the address **Felts** used belonged to his parents and the IP address captured is for service at the **PREMISES**.

52. **Felts** submitted a copy of Form 941 for Habitat Restaurant Holdings LLC for the first quarter of 2020 with his PPP loan application. The return claimed 19 employees, which matches the application. The total wages ($305,511) is less than the average monthly payroll amount on the application.

21

53.    Per IRS records, Habitat Restaurant Holdings LLC has not filed any Forms 941 for any quarters in 2019 or 2020.  Nor does MO-DES have any Quarterly Contribution and Wage Reports for the same quarters.  This would indicate that the company did not have any employees.

54.    On or about May 1, 2020, **Felts**, as the sole signer, opened account number ending in 6318 in the name of Habitat Restaurants Holdings LLC, at Incredible Bank.  PPP loan proceeds were the only deposits to this account between opening and November 30, 2021.

55.    **Felts** used the PPP loan proceeds deposited to the Habitat Restaurant Holdings LLC account at Incredible Bank to fund the following:

    a.    **Felts** sent multiple wires totaling approximately $298,484.90 between May 2020 and August 2020 to the account of Taco Habitat GMP LLC, number ending in 6792, at Southern Bank.  The balance in this account was $4.72 before the wires were received.  An EIDL of approximately $149,900.00, a $10,000 Grant, and a $34,000 deposit from First Bank to fund construction[12] of Taco Habitat at Glenstone Marketplace were the only other deposits during this time.  **Felts** submitted the EIDL Application of Taco Habitat GMP LLC on or about June 27, 2020.  As with the PPP loan for Taco Habitat GMP LLC, Felts provided a false number of employees (27) on the EIDL application.  Additionally, he provided amounts for gross revenue ($2,200,000) and cost of goods sold ($700,000) when

---

[12] On or about July 29, 2020, Felts requested $34,000 in working capital from a separate SBA loan from First Bank for the construction and opening of Taco Habitat at Glenstone Marketplace.  Felts represented that he needed the funds for insurance, August utilities, NuCO2 bill for August, payroll, and rent for land lease.

the business was not in operation. The $10,000 Grant was fraudulently obtained using the same EIDL application with the same false information. Of the funds sent to Taco Habitat GMP LLC account number ending in 6792, they were used as follows:

      i.      On or about June 1, 2020, **Felts** withdrew $25,989 to fund cashier's check 12974 in the amount of $25,984 to Corwin Ford for a catering van. Corwin Ford records showed that, on or about June 1, 2020, it sold a 2020 Ford Van (VIN:NM0LS7E21L1464162) to Taco Habitat GMP LLC for $25,984. I have personally observed this vehicle at the address of 3325 South Glenstone Avenue, Springfield, Missouri 65804. The payment by **Felts** to purchase this van are attributable to fraud;

      ii.      Between May 13, 2020, and June 21, 2020, **Felts** transferred approximately $80,175 to his personal account number ending in 5125 at Southern Bank;

      iii.      Between May 13, 2020, and June 21, 2020, **Felts** transferred approximately $67,800 to an account number ending in 4904 in the name of Bourbon and Beale LLC at Southern Bank; and

      iv.      On or about August 14, 2020, **Felts** used a portion of these funds to purchase a cashier's check number ending in 036182 in the amount of approximately $118,025 and payable to Concept Pro LLC.[13]

---

[13]Concept Pro LLC is a company owned by **Felts** as is evidenced by bank records and filings with the Missouri SOS.

23

This shows that **Felts** used PPP loan proceeds for non-payroll expenses and expenses unrelated to the operation of the listed business. Further, **Felts** used more than 40% ($291,989 / $327,027 = 89%) of the PPP loan proceeds for non-payroll expenses, which is related to **Felts'** loan forgiveness upon his later PPP application in May 2021, as described below. Through these transactions, **Felts** layered proceeds through one or more bank accounts. **Felts** then used proceeds to fund the purchase of assets. These transactions demonstrate that probable cause exists to believe that **Felts** violated 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957 in each instance.

*Cluck 2 LLC*

56.     In or about April 2020, **Felts** applied for a PPP loan for Cluck 2 LLC with Incredible Bank. **Felts** and his wife opened the original location of Hot Cluckers at 1450 East Sunshine in Springfield, Missouri. The address of Cluck 2 LLC provided on the application is "4406 S Campbell Ave, #116 Springfield, Missouri". At the time, this address was planned as another location of Hot Cluckers in Springfield, Missouri, as evidenced by the signage on the building. However, I observed it on multiple occasions in 2020, and this location was never open for business. In fact, this location only recently opened in or about September 2021, based on job announcements, "Now Open" banners, and signs. Additionally, bank records show that Cluck 2 LLC did not start receiving deposits from customer credit card receipts until approximately September 24, 2021, and cash deposits did not start until approximately October 5, 2021.

57.     **Felts** provided the following information as part of the PPP application process for Cluck 2 LLC:

        a.     **Felts** physically signed the initial application dated April 24, 2020;

b.  **Felts** is the 100% owner of Cluck 2 LLC;

c.  **Felts'** address is 211 Catskill Road, Walnut Shade, Missouri;

d.  **Felts'** email address is diversifiedmusic@aol.com;

e.  There are 18 employees;

f.  The average monthly payroll is $111,363.77;

g.  The purpose of the loan is for payroll;

h.  **Felts** certified that the loan information provided was materially true and accurate; and

i.  **Felts** directed the loan proceeds of $278,400 that were awarded to be deposited in account number ending in 6425 in the name of Cluck 2 LLC at Incredible Bank.

58.  An IP address of 99.45.215.62 was captured when **Felts** electronically signed loan documents sent to his email address as a part of this process. As was described above, the address used by **Felts** belonged to his parents, the email address belonged to **Felts,** and the IP address captured is for service at the **PREMISES**.

59.  **Felts** submitted a copy of Form 941 for Cluck 2 LLC for the first quarter of 2020 as a part of this application. The return claimed 17 employees, which is one less than what was listed on the application. The first quarter return total wages ($176,500) is less than the average monthly payroll amount on the application.

60.  Per IRS records, Cluck 2 LLC has not filed any Forms 941 for any quarters in 2019 or 2020. Nor does MO-DES have any Quarterly Contribution and Wage Reports for the same quarters. This would indicate that the company did not have any employees.

61.     On or about May 1, 2020, **Felts**, as the sole signer, opened the Cluck 2 LLC account number ending in 6425 at Incredible Bank. PPP loan proceeds were the only deposits to this account between opening and November 30, 2021.

62.     **Felts** used the PPP loan proceeds deposited to the Cluck 2 LLC account at Incredible Bank to fund the following:

a.      **Felts** sent multiple wires totaling approximately $275,290 between May 2020 and July 2020, to the account of Cluck 2 LLC, number ending in 2347, at Central Bank of the Ozarks. **Felts** opened this account on or about April 30, 2020, as the sole signer. A $10,000 Grant deposited on or about June 23, 2020, was the only other deposit in this account during this time. **Felts** submitted the EIDL Application that led to this Grant on or about June 20, 2020. As with the PPP loan, **Felts** provided a false number of employees (27) on the EIDL application. Additionally, he provided amounts for gross revenue ($960,000) and cost of goods sold ($4,785,000) when the business was not in operation. Of the funds sent to this account, they were used as follows:

i.      **Felts** wrote check number 1001, dated May 13, 2020, in the amount of $26,051 to Corwin Ford for a "Catering Van." Corwin Ford records show that, on or about May 13, 2020, **Felts** used check 1001 to purchase a 2020 Ford Van (VIN: NM0LS7E26L1468417) for $26,051 in the name of Cluck 2 LLC. I have personally observed this vehicle at the address of 4415 South Campbell Avenue, Springfield, Missouri 65810, a location within the Western District of Missouri. The funds used by **Felts** to purchase this van are attributable to fraud;

26

ii.      **Felts** wrote check number 1005, dated July 17, 2020, in the amount of $14,700 to Concept Pro LLC;

iii.      **Felts** wrote monthly checks to "EWP" for rent between May and September 2020 totaling approximately $75,214.65; and

iv.      **Felts** also wrote two checks in May and August 2020, totaling approximately $42,960 to a sign company.

This shows that **Felts** used PPP loan proceeds for non-payroll expenses, which conflicts with the stated purpose on his PPP application. Further, he used more than 40% ($158,926 / $278,400 = 57%) of the PPP Loan proceeds for non-payroll expenses, which is related to **Felts'** loan forgiveness upon his later PPP application in April 2021, as described below. Through these transactions, **Felts** layered proceeds through one or more bank accounts. **Felts** then used proceeds to fund the purchase of assets. These transactions demonstrate that probable cause exists to believe that **Felts** also violated 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957 in each instance.

*Taco Habitat Branson LLC*

63.      In or about May 2020, **Felts** applied for a PPP loan for Taco Habitat Branson LLC with The Loan Source Inc. The address of Taco Habitat Branson LLC provided on the application is "600 W Main Street, Branson, MO." This is the same address that **Felts** used above for Habitat Restaurant Holdings LLC. At the time of application and through the end of September 2021, this address had no permitted structures for food service. It was an empty lot awaiting development.

64.      **Felts** provided the following information as part of the PPP application process for Taco Habitat Branson LLC:

27

a. **Felts** signed the initial application dated May 5, 2020;

b. **Felts** is the 100% owner of Taco Habitat Branson LLC;

c. **Felts'** address is 211 Catskill Road, Austin, Texas;

d. There are 26 employees;

e. The purpose of the loan is for payroll and rent/mortgage;

f. The average monthly payroll is $124,000;

g. **Felts** certified that the loan information provided was materially true and accurate; and

h. **Felts** directed the loan proceeds of $310,000 that were awarded to be deposited in account number ending in 3838 in the name of Taco Habitat Branson LLC, at Hawthorn Bank.

65. **Felts** address is not at 211 Catskill Road, and I am not certain whether **Felts** accidentally or intentionally put the city and state as Austin, Texas.

66. **Felts** submitted a copy of Form 941 for Taco Habitat Branson LLC, for the first quarter of 2020 and for all quarters in 2019 with this PPP application. All returns show 26 employees and total wages of $372,113, which match the employee number and average monthly payroll amount on the application.

67. During 2019, Taco Habitat Branson LLC reported no more than two employees on quarterly reports with MO-DES. One of the employees was Kenneth Felts, who is **Felts'** brother.[14] This stayed the same through the third quarter of 2020. This indicates that the company does not have 26 employees.

---

[14]**Felts** identified Kenneth Felts as his brother and "nearest relative not living with you" on a credit application.

68.     **Felts** opened Taco Habitat Branson LLC account number ending 3838 at Hawthorn Bank in 2018 as the sole signer.  There was less than $7,000 in the account when the PPP loan and an EIDL of approximately $150,000 were deposited into the account.  The PPP loan and the EIDL were the only deposits between their disbursement through approximately November 15, 2020.  The PPP loan proceeds were deposited into the account on or about July 8, 2020.  **Felts** submitted the EIDL Application on or about June 18, 2020.  As with the PPP loan, Felts provided the same false number of employees (26) on the EIDL application.  Additionally, he provided amounts for gross revenue ($980,000) and cost of goods sold ($425,000) when the business was not in operation.  **Felts** used the PPP loan and EIDL proceeds deposited to the account to fund the following:

a.     **Felts** wrote check number 1004, dated July 25, 2020, in the amount of $58,594 to Corwin Dodge for a "Catering Vehicle."  Corwin Dodge records show that on or about July 25, 2020, **Felts** used check number 1004 to purchase a 2020 Jeep Wrangler (VIN:1C4HJXFGXLW312762) for $58,594 in his name.  On or about August 10, 2020, Jason Bucher registered and titled this vehicle with the Missouri Department of Revenue and submitted a signed affidavit from **Felts** that this Jeep was a gift, and no money or other valuable consideration was involved in the transaction.  I have personally observed this vehicle at the address of 606 Parnell Drive, Branson, Missouri 65616, a location within the Western District of Missouri.  The funds used by **Felts** through check number 1004 to purchase this vehicle are attributable to fraud;

b.     **Felts** withdrew $125,707 on or about August 20, 2020, to fund cashier's check number 0159614 payable to Hogan Title.  Hogan Title records show

that **Felts** used this check to pay for the purchase of Lot 4 in the Jones Spring subdivision;[15]

   c.  **Felts** withdrew $8,500 on or about September 3, 2020, to fund a cashier's check to Glenstone Marketplace (the landlord for Taco Habitat GMP); and

   d.  In August, September, and October 2020, **Felts** transferred $15,740.55 each month to make total payments of approximately $47,222 on a loan with Hawthorn Bank, number 101011450, in the name of Habitat Restaurant Holdings LLC and secured by the land at 600 West Main Street, Branson, Missouri. This shows that **Felts** used PPP loan proceeds for expenses unrelated to those stated in the PPP application and for expenses unrelated to the business named in the application. These transactions demonstrate that probable cause exists to believe that **Felts** also violated 18 U.S.C. § 1957.

*White River Brewco LLC*

  69. In or about May 2020, **Felts** applied for a PPP loan for White River Brewco LLC with Blue Ridge Bank. The address of White River Brewco LLC provided on the application is "505 W Commercial Street, Springfield, MO." This is a location within the Western District of Missouri. This appeared to be a viable brewery and tap room based on observations several months after the loan application.

---

[15]The full legal description is Lot Four (4), replat of lots 2, 8, 8A, 9 & 9A of Jones Spring, A Subdivision in Greene County, Missouri. This is a vacant lot that adjoins 1224 South Jones Spring Lane, and the properties were purchased simultaneously from the same seller.

70. **Felts** provided the following information as part of the PPP application process for White River Brewco LLC:

    a.    **Felts** electronically signed the initial application dated May 1, 2020;

    b.    **Felts** is the 100% owner of White River Brewco LLC;

    c.    **Felts'** address is 11 Catskill Road, Walnut Shade, Missouri;

    d.    **Felts'** email address is wrbrewcollc@gmail.com;

    e.    **Felts** used phone number 305-746-2515;

    f.    There are 46 employees;

    g.    The purpose of the loan is for payroll;

    h.    The average monthly payroll is $360,500;

    i.    **Felts** certified that the loan information provided was materially true and accurate; and

    j.    **Felts** directed the loan proceeds of $901,000 that were awarded to be deposited in the White River Brewco LLC, account number ending in 2320 at Central Bank of the Ozarks.

71. As was described above, the address on Catskill Road used by **Felts** in the application belonged to his parents. Additionally, as was referenced previously, **Felts** uses the phone number 305-746-2515, even though his deceased grandmother is the subscriber.

72. Based on subscriber records from Google, wrbrewcollc@gmail.com is registered to John Felts.

73. **Felts** submitted a copy of Form 941 for White River Brewco LLC, for the first quarter of 2020 and two quarters in 2019. The first quarter return for 2020 shows 46

employees, which matches the application, and the return total wages ($1,081,639) approximately match the average monthly payroll amount on the application. The prior quarterly wages reported in 2019 were $360,546, which is much less than in 2020.

74.     Per IRS records, White River Brewco LLC has not filed any Forms 941 for any quarters in 2019 or 2020. Nor does MO-DES have any Quarterly Contribution and Wage Report filings for the same quarters. This would indicate that the company did not have any employees, refuting the information provided by **Felts** in his PPP loan application.

75.     On or about April 30, 2020, **Felts**, as the sole signer, opened the White River Brewco LLC, account number ending in 2320 at Central Bank of the Ozarks. After a $300 cash deposit to open the account, PPP loan proceeds were the only funds deposited to this account through June 30, 2021.

76.     The loan proceeds were deposited into the Central Bank of the Ozarks account on or about May 13, 2020. **Felts** used the PPP loan proceeds deposited to the White River Brewco LLC, account at Central Bank of the Ozarks to fund the following:

     a.      On or about May 18, 2020, **Felts** sent a wire in the amount of $137,500 to Bright Vanguard LLC, account number ending in 0329 at JP Morgan Chase Bank NA;

     b.      On or about May 4, 2020, **Felts** transferred $52,000 to account number ending 2894 at Central Bank of the Ozarks in the name of Taco Habitat Branson LLC;

     c.      **Felts** wrote check number 1002, dated July 25, 2020, in the amount of $72,000 to Concept Pro;

d.     **Felts** wrote check number 1003, dated July 31, 2020, in the amount of $74,529 to Corwin Ford for a "Company Car". Corwin Ford records show that **Felts** used check number 1003 to purchase a 2020 Ford F-150 (VIN:1FTFW1RG3LFC22791) for $75,330 on or about July 31, 2020. This vehicle is registered with the State of Missouri at 211 Catskill Road, Walnut Shade, Missouri 65771. Given that the only funds present in Central Bank of the Ozarks account number ending 2320 at the time were PPP proceeds, excepting the initial $300 deposit to open the account, the funds used by **Felts** through check number 1003 to purchase this vehicle are attributable to fraud;

e.     **Felts** withdrew $221,375 on or about August 17, 2020, to fund a cashier's check to White River Brewco LLC, which was deposited to the White River Brewco LLC account number ending in 5544 at Sullivan Bank. The only other deposit to this account between July 2020 and November 2020 was $100, when Felts opened the account in July 2020. Of the funds sent to the White River Brewco LLC account number ending 5544, they were used as follows:

i.     **Felts** withdrew $154,339.07 on or about August 20, 2020, to fund cashier's check number 60103792 to Preferred Title, and Preferred Title records show this check funded the purchase of a single-family home at 2023 South Arcadia Avenue in Springfield, Missouri, (Lot 12 Block B in Southern Hills of Springfield) under the name JMR Flips LLC;

ii.     On or about September 4, 2020, **Felts** sent a wire in the amount of $50,000 to United Southern Properties in Gallatin, Tennessee, with the wire instructions referencing construction; and

33

iii.      **Felts** withdrew $12,000 on or about November 30, 2020, to fund a cashier's check to himself; and

f.      **Felts** wrote check number 1078, dated November 18, 2020, in the amount of $50,000 to ReRover LLC for a "Marketing Truck/Rover."

This shows that **Felts** used PPP loan proceeds for non-payroll expenses and for expenses unrelated to the business on the application. Through these transactions, **Felts** layered proceeds through one or more bank accounts. **Felts** then used proceeds to fund the purchase of assets. These transactions demonstrate that probable cause exists to believe that **Felts** also violated 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957 in each instance.

**Felts' Second Round PPP Applications**

*Cluck 2 LLC*

77.      In or about April 2021, **Felts** applied for a second PPP loan with Incredible Bank for Cluck 2 LLC. The address of Cluck 2 LLC provided on the second application is 4406 S. Campbell Avenue, #116 Springfield, Missouri. This is a location within the Western District of Missouri. As was noted above, I observed the restaurant opened in or about September 2021.

78.      **Felts** provided the following information as part of the PPP application process for Cluck 2 LLC:

a.      **Felts** physically signed the initial application, dated March 16, 2021;

b.      **Felts** is the 100% owner of Cluck 2 LLC;

c.      **Felts'** address is 211 Catskill Road, Walnut Shade, Missouri;

d.      **Felts'** email address is diversifiedmusic@aol.com;

34

e.    There were 18 employees;

f.    The average monthly payroll is $86,736.39;

g.    The purpose of the loan is for payroll, rent, utilities, and covered operations expenditures;

h.    **Felts** certified that the First Draw PPP Loan was only used for eligible expenses and that he understood he could face charges of fraud for knowingly using the funds for unauthorized purposes;

i.    **Felts** certified that the loan information provided was materially true and accurate; and

j.    **Felts** directed the loan proceeds of $303,577 that were awarded to be deposited in account number ending in 6425 at Incredible Bank.

79.    As was described above, the address on Catskill Road used by **Felts** belonged to his parents and the email address belonged to **Felts**.

80.    **Felts** submitted copies of Form 941 for Cluck 2 LLC for the second, third, and fourth quarters of 2020. The returns show 18 employees, which matches the application. The fourth quarter return total wages ($234,660) is less than the average monthly payroll amount on the application.

81.    Per IRS records, Cluck 2 LLC has not filed any Forms 941 for any quarters in 2019 or 2020. Nor does MO-DES have any Quarterly Contribution and Wage Reports between 2019 and the third quarter of 2021. This would indicate that the company did not have any employees, refuting the information provided by **Felts** in his PPP loan application.

35

82.     As was noted above in relation to the first PPP application for Cluck 2 LLC, I observed the Campbell location on multiple occasions in 2020, and this location was never open for business.  In fact, this location only opened in or about September 2021 based on job announcements, "Now Open" banners, and signs observed by me. Additionally, bank records show that Cluck 2 LLC did not start receiving deposits from customer credit card receipts until approximately September 24, 2021, and cash deposits did not start until approximately October 5, 2021.

83.     Again, as previously noted about the Cluck 2 LLC account number ending in 6425, **Felts**, as the sole signer, opened the Cluck 2 LLC account on or about May 1, 2020, at Incredible Bank. PPP loan proceeds are the only deposits to this account between opening and November 30, 2021.

84.     **Felts** used the PPP loan proceeds deposited to the Cluck 2 LLC account at Incredible Bank to fund the following:

    a.     **Felts** wrote check number 1000, dated April 8, 2021, in the amount of $15,075, to EWP LLC, for rent on 4406 South Campbell #106;

    b.     **Felts** wrote check numbers 1001, 1012, and 1014, between April and June 2021, to Tillman Investments, totaling $22,000, for the rent at 3352 E. Sunshine, Springfield, Missouri, which is the original location of Hot Cluckers, and a separate entity;

    c.     **Felts** wrote check number 1004, dated April 23, 2021, in the amount of $10,968.87, to US Foods, which I believe to be a food supply company;

    d.     **Felts** wrote multiple checks between April and June 2021, totaling approximately $215,171, which were deposited to the account of Cluck 2 LLC,

number ending in 2347, at Central Bank of the Ozarks. The balance in this account was approximately $6,100 when Felts began depositing the PPP proceeds, and there were no other deposits during this time frame. Of the funds sent to Cluck 2 LLC account number ending in 2347, they were used as follows:

      i.      **Felts** wrote check number 1090, dated April 26, 2021, in the amount of $34,155.74, to Outdoor Wonders, which appears to be the same company registered in Ozark, Missouri, and, based on the website of the Better Business Bureau, sells patio furniture;

      ii.      **Felts** wrote two checks, 1091 and 1094, dated May 5, 2021, and July 6, 2021, respectively, and totaling $30,613.71 to EWP LLC for rent;

      iii.      **Felts** withdrew $25,000 in funds on or about July 2, 2021, to purchase cashier's check number 375544 to Fidelity Title;[16]

      iv.      On or about June 23, 2021, Felts initiated a payment of $24,773.80 to his Apple Card registered under diversifiedmusic@aol.com. **Felts** paid for credit purchases of:

          1.      $4,192.60 at Hyatt Regency in Monterey, California, on or about June 10, 2021; and

          2.      $16,783.42 at Mitchum Jewelers in Ozark, Missouri, on or about June 9, 2021. Records from Mitchum Jewelers show that **Felts** purchased a ladies' platinum "RoyalT" Tacori eternity

---

[16]Fidelity Title is handling construction draws from **Felts'** residence at the **PREMISES**. This check funded one of these construction draws.

37

band featuring oval diamonds (Item 110-01263) at a cost of $16,783.42 on or about June 9, 2021. The following day, **Felts** returned this wedding band. **Felts** applied the refunded amount to the purchase of a new, ladies' platinum "RoyalT" Tacori eternity band (Item 180360-005). The new wedding ring cost approximately $17,325.17 with tax. The funds used for this purchase are attributable to fraud.

This shows that **Felts** used PPP loan proceeds for personal, non-business-related expenses. Through these transactions, **Felts** layered proceeds through one or more bank accounts. **Felts** then used proceeds to fund the purchase of assets. These transactions demonstrate that probable cause exists to believe that **Felts** also violated 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957.

*Habitat Restaurant Holdings LLC*

85. On or about May 6, 2021, **Felts** applied for a second PPP Loan for Habitat Restaurant Holdings LLC, with Incredible Bank. The address provided on the second application is 613 West Pacific in Branson, Missouri. This lot is adjacent to the address **Felts** used on the first loan at 600 West Main Street in Branson, Missouri. The Main Street and Pacific addresses encompass the property which Habitat Restaurant Holdings LLC is developing and building a Taco Habitat restaurant (similar to the location on South Glenstone in Springfield, Missouri). As of January 31, 2022, the City of Branson had not issued a Certificate of Occupancy or similar document, or a business license to operate at this location.

86. **Felts** provided the following information as part of the PPP application process for Habitat Restaurant Holdings LLC:

  a. **Felts** physically signed the initial application dated April 21, 2021;

  b. **Felts** is the 100% owner of Habitat Restaurant Holdings LLC;

  c. **Felts'** address is 211 Catskill Road, Walnut Shade, Missouri;

  d. **Felts** used phone number 305-746-2515;

  e. There are 28 employees;

  f. The average monthly payroll is $115,229.86;

  g. The purpose of the loan is for payroll;

  h. **Felts** certified that the First Draw PPP Loan was only used for eligible expenses and that he understood he could face charges of fraud for knowingly using the funds for unauthorized purposes;

  i. **Felts** certified that the loan information provided was materially true and accurate; and

  j. **Felts** directed the loan proceeds of $403,304 that were awarded to be deposited in account number ending in 6318 at Incredible Bank.

87. **Felts** submitted copies of Forms 941 for Habitat Restaurant Holdings LLC, for the first, second, and third quarters of 2020 with the application. The third quarter 2020 return shows 28 employees and quarterly total wages ($506,445) that exceed average monthly payroll amount on the application.

88. Per IRS records, Habitat Restaurant Holdings LLC, has not filed any Forms 941 for any quarters in 2019 or 2020. Nor does MO-DES have any Quarterly Contribution and Wage Reports between 2019 and the third quarter of 2021. This would indicate that

the company did not have any employees, refuting the information provided by **Felts** in his PPP loan application.

89.     Again, the Habitat Restaurant Holdings LLC, account number ending in 6318 at Incredible Bank was opened around the time of the first PPP application (May 1, 2020).  PPP loan proceeds were the only funds deposited to this account between opening and November 30, 2021.  **Felts** used the PPP loan proceeds deposited to the Habitat Restaurant Holdings LLC account at Incredible Bank to fund the following:

a.     Between May and August 2021, **Felts** wrote multiple checks on Habitat Restaurant Holdings LLC account number ending in 6318 payable to Taco Habitat.  These checks were deposited in the Taco Habitat GMP LLC account number ending in 6792 at Southern Bank.  These include the following check numbers and amounts:

i.     10001 - $57,714.29, on or about May 13, 2021;

ii.     10002 - $58,310.54, on or about May 27, 2021;

iii.     10003 - $57,421.11, on or about June 11, 2021.  On or about June 14, 2021, **Felts** transferred $25,000 of these funds to his personal account number ending in 5125, which, in turn, partially funded a wire in the amount of $50,000 to MarineMax East in Lake Ozark, Missouri, with reference to "Purchase of New Boat from MarineMax" as the purpose.  Per MarineMax records, this wire was combined with other funds and a loan to purchase a 2021 Galeon 470SKY Yacht with Hull Identification Number GLN47015A121 for approximately $1.3 million.  I have personally observed this vessel at the address of 363 Harbor Lane, Branson, Missouri

40

65616, a location within the Western District of Missouri. The funds used through check number 10003 to finance the purchase of this boat are attributable to fraud;

      iv.      10004 - $58,102.32, on or about June 24, 2021;

      v.      10007 - $7,500.00, on or about July 9, 2021;

      vi.      10009 - $57,891.42, on or about July 21, 2021; and

      vii.      100010 - $67,500.00, on or about August 4, 2021. On or about August 6, 2021, **Felts** transferred $65,000 of these funds to his personal account number ending in 5125, which in turn funded check number 10252 on the same day in the amount of $60,000 and payable to Fidelity Title;[17]

      b.      **Felts** wrote check number 10005, dated July 6, 2021, in the amount of $8,500 to Glenstone Marketplace LLC, which I believe to be for July 2021 rent for the Taco Habitat GMP LLC location based on the fact that "July 2021" is in the memo line; and

      c.      Felts wrote check number 10008, dated July 15, 2021, in the amount of $9,931.92 to the Missouri Department of Revenue for "Sales Tax Payment."

Through these transactions, **Felts** layered proceeds through one or more bank accounts. **Felts** then used proceeds to fund the purchase of assets. These transactions demonstrate that probable cause exists to believe that **Felts** also violated 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957.

---

[17]This check funded another of the construction draws on the **PREMISES**.

**First Round PPP Applications using Synthesized Identities**

*Super's Entertainment LLC*

90.     In or about May 2020, the PPP application for Super's Entertainment LLC was filed by "Tom Holland" with Fountainhead Small Business Funding ("Fountainhead"). The application provided the following information:

|   |   |   |
|---|---|---|
| a. | Business address: | 108 Wintergreen Road, Branson, Missouri |
| b. | Business phone: | 417-386-0404 |
| c. | Average Payroll: | $464,449 |
| d. | Loan Request: | $1,161,100 |
| e. | No. of Employees: | 86 |
| f. | Loan Purpose: | Payroll |
| g. | Owner name: | Tom Holland |
| h. | Owner TIN: | 516430412 |
| i. | Owner address: | "1005 W 8th Street, Houston, Texas 77077" |

91.     The Certificate of Organization from the Missouri SOS for Super's Entertainment LLC was provided to Fountainhead.  I viewed the entire filing with the Missouri SOS for Super's Entertainment LLC. The Articles of Organization show that **Felts**, using the address of 211 Catskill Road, was the organizer in 2010.  In August 2016, **Felts**, acting as Registered Agent, changed the address to 108 Wintergreen.   **Felts** made two subsequent filings in 2016 to change the name of the Registered Agent to "Michael Felts."  All of these filings were returned to diversifiedmusic@aol.com.  This is the same email address **Felts** used for some PPP applications in his own name.

92.     Based upon my observation of 108 Wintergreen in 2020, no sign or other indicia were present to indicate that Super's Entertainment LLC operated out of the building. There were signs present for other building tenants.

93.     The phone number provided for Super's Entertainment LLC is registered to Phone.com Inc. Subscriber records from Phone.com Inc. show that **Felts** initiated service for this number on May 11, 2020, and phone calls to this number were forwarded to 305-746-2515. Telephone number 305-746-2515 is the same number in the name of **Felts'** deceased grandmother and provided by **Felts** on multiple occasions for loan and account applications under his name. Additionally, **Felts'** service request to Phone.com Inc. originated from IP address 99.45.215.62 and, as discussed above, was registered to **Felts'** wife, at the **PREMISES,** which was their residence.

94.     The borrower submitted to Fountainhead Texas driver license number 76764271, for Thomas Holland with the same address as above. I verified that this license does not exist, nor does the Texas Department of Public Safety ("Texas DPS") have record of a Thomas Holland with the same identifiers provided on the loan application.

95.     The borrower also submitted a Social Security Card for Thomas Holland with the same Social Security Number ("SSN") as above. I verified with the Social Security Administration that there is not a Thomas Holland with this SSN.

96.     To support the loan request figures, the borrower submitted copies of Forms 941 for all four quarters in 2019 and the first quarter of 2020 with the application. The Forms 941 for all four quarters in 2019 appear to be identical. The Form 941 for first quarter 2020 shows 86 employees and quarterly total wages of $1,412,685, which is slightly higher than the average payroll amount provided for the loan.

43

97.     Per IRS records, Super's Entertainment LLC has not filed any Forms 941 for any quarters in 2019 or 2020. Nor does MO-DES have any Quarterly Contribution and Wage Reports between 2019 and the third quarter of 2021. This would indicate that the company did not have any employees, refuting claims made by the borrower within the PPP loan application.

98.     Additionally, "Thomas Holland" signed the loan documents on or about May 21, 2020, from an IP address of 99.45.215.62 which, as discussed above, was registered to **Felts'** wife at the **PREMISES**.

99.     Finally, the loan proceeds of $1,161,100 were deposited into an account number ending in 6660 in the name of Super's Entertainment LLC, at Central Bank of the Ozarks. **Felts** opened this account on or about May 11, 2020, as the sole signer. The only other deposits made in 2020 to this account were a $149,900 EIDL, a $10,000 Grant, and a $50 transfer. "Holland" submitted the EIDL Application on or about June 18, 2020. As with the PPP loan, "Holland" provided a false number of employees (11) on the EIDL application. Additionally, he provided amounts for gross revenue ($880,000) and cost of goods sold ($470,000) when the business was not in operation. The $10,000 Grant was awarded based upon "Holland's" false information in the EIDL Application. **Felts** used the proceeds to fund the following:

      a.     On or about June 23, 2020, **Felts** purchased cashier's check number 367763 in the amount of $155,800 to Bright Vanguard LLC;

      b.     On or about July 3, 2020, **Felts** purchased cashier's check number 368080 in the amount of $30,189.72 to Bright Vanguard LLC;

44

c.      On or about August 7, 2020, **Felts** purchased cashier's check number 368832 in the amount of $150,000 to Concept Pro LLC;

d.      On or about August 14, 2020, **Felts** purchased cashier's check number 369008 in the amount of $113,818 to Concept Pro LLC;

e.      On or about October 21, 2020, **Felts** wired $30,000 to People's Capital and Leasing Corp with reference to "Equipment Payoff Computers and Servers;"

f.      On or about November 30, 2020, **Felts** wrote check number 0004 in the amount of $26,000 to Corwin Ford with "Promotional Vehicle/Service" in the memo line.

   i.      Corwin Ford records show that, on or about November 28, 2020, **Felts** purchased a 2020 Ford Mustang GT500 (VIN:1FA6P8SJ4L5504932) and check number 0004 was the down payment for the vehicle;

g.      On or about December 2, 2020, **Felts** wrote check number 0005 in the amount of $128,000 to Concept Pro;

h.      On or about December 11, 2020, **Felts** wired $185,000 to People's Capital and Leasing Corp with reference to E-8 Productions;

i.      During 2020, **Felts** made approximately $263,716 in payments to Chase Credit Card(s). These payments paid for credit purchases including:

   i.      $14,177.50 at Levy Jewelers in Savannah, Georgia, on or about June 9, 2020. Records from Levy Jewelers show that **Felts** purchased, as a part of this transaction, a two-tone Rolex (model number 72801, serial

45

number 931C8733), a ladies' sterling silver cable cuff bracelet with pearl end caps made by David Yurman (item number B04182 SSDPEDI), and a ladies' sterling silver cable cuff bracelet with blue topaz end caps made by David Yurman (item number B04182 SSABTDIM). The funds used to pay for these items are attributable to fraud;

ii.    $9,388.32 at Missouri Furniture in Ozark, Missouri, on or about July 1, 2020;

iii.    $7,587.99 at Gilt.com, a women's clothing website, on or about July 31, 2020;

iv.    $5,000.00 at Corwin Ford in Springfield, Missouri, on or about August 17, 2020;

v.    $8,246.82 at Havertys, a furniture store, in Springfield, Missouri, on or about August 21, 2020;

vi.    $5,631.74 at Simmons Beautyrest in Springfield, Missouri, on or about August 25, 2020;

vii.    $6,771.49 at Corwin Ford in Springfield, Missouri, on or about September 4, 2020;

viii.    $9,205.41 at Mitchum Jewelers in Ozark, Missouri, on or about November 28, 2020. Records from Mitchum Jewelers show that **Felts** purchased an 18k Yellow Gold Rolex (Model #69178 S/N 9155671) at a cost of $9,205.41 on or about November 28, 2020. The funds used to purchase this item are attributable to fraud; and

46

ix.    $4,842.43 at Mitchum Jewelers in Ozark, Missouri, on or about December 21, 2020.  Records from Mitchum Jewelers show that **Felts** purchased two pieces, at a cost of $4,842.43, on or about December 21, 2020, to wit: a seven-inch, white gold diamond bracelet featuring round brilliant cut diamonds with a total diamond weight of 0.25Ct and a pair of 18 Karat white gold, three-prong/martini style round brilliant cut diamond (J/K color and SI clarity) stud earrings with a total diamond weight of 1.00Ct.  The funds used to purchase these items are attributable to fraud.

j.    On or about March 23, 2021, Felts made a payment of approximately $13,041 to a Capital One credit card.  This payment was for the purchase of various sports cards from Goldin Auctions in Runnemede, New Jersey, on or about March 20, 2021.  Records from Goldin Auctions show that the purchase was for a 1952 Topps Jackie Robinson baseball card and a 1980-1981 Topps Larry Bird, Julius Erving, and Magic Johnson rookie card, signed by all three.  The funds used to purchase these items are attributable to fraud.

This shows that **Felts** used PPP Loan proceeds for personal expenses unrelated to business expenditures.

*Diagnostic Equipment Inc.*

100.    In or about April 2020, the PPP application for Diagnostic Equipment Inc. was filed by "Peter Gollan" with Incredible Bank.  The application provided the following information:

a.    Business address:    "201 Burnsville Pkwy Ste 130B, Burnsville, MN"

47

    b.      Business phone:    952-213-1415

    c.      Average payroll:    $330,148

    d.      Loan request:    $869,230

    e.      No. of employees:    55

    f.      Loan Purpose:    Payroll

    g.      Owner name:    Peter Gollan

    h.      Owner address:    5620 Lexington Circle, Lumberton, TX 77657

101.    The borrower submitted with the application a Certificate of Good Standing and Annual Renewal for Diagnostic Equipment Inc., from the Minnesota Secretary of State.  A review of records from the Minnesota Secretary of State show that Diagnostic Equipment Inc., originally filed for organization in 1983.  The company then went through Administrative Dissolution in 1991 and was dormant until reinstatement on or about February 12, 2020.  A "John Williams" and/or "Thomas White" used the same American Express branded prepaid gift card to pay for the reinstatement.  Someone initiated queries on the Minnesota Secretary of State website for Diagnostic Equipment Inc., from the IP address of 99.45.215.62 on or about January 28, February 11, February 12, February 20, April 22, and April 26, 2020.  During these times, and as has been mentioned previously, this IP address was registered to **Felts'** wife at the **PREMISES.**

102.    The borrower also submitted to Celtic Bank Texas driver license number 44816055, for Peter Gollan with the same address as above.  I verified that this license number belongs to another person, specifically a white female.  The Texas DPS does not have record of a Peter Gollan with the same identifiers.

48

103.    To support the loan request figures for Diagnostic Equipment Inc., the borrower submitted copies of Forms 941 for all four quarters in 2019 and the first quarter of 2020 with the application.  All of the Forms 941 appear to be identical with respect to the number of employees (55) and total quarterly wages ($990,445).  This matches the information provided on the application for employees and the average monthly payroll.

104.    Per IRS records, Diagnostic Equipment Inc., has not filed any Forms 941 for any quarters in 2019 or 2020.  Additionally, Diagnostic Equipment Inc. has not filed any quarterly wage reports for 2017 through 2021 with the Minnesota Department of Employment and Economic Development ("MN DEED"). This would indicate that the company does not have any employees.

105.    The loan documents were electronically signed on or about May 6, 2020, by Peter Gollan using DocuSign.  IP address 174.234.140.176 was captured upon signing.  This IP address is registered to Verizon and is used as part of Carrier Grade Natting.  Near the time this loan was signed, Verizon temporarily assigned the same IP address to mobile phone number 417-419-0264.  Verizon subscriber records show that this number is a business account under Bourbon & Beale LLC at 2639 South Glenstone, Springfield, Missouri, for Ryan Matthews.  Bourbon & Beale LLC is a company owned by **Felts** as is evidenced by bank records, news reports, and filings with the Missouri SOS.

106.    The loan proceeds of $869,200 were deposited into an account number ending in 5674 in the name of Diagnostic Equipment Inc., at Incredible Bank.  Someone opened this account in the name of the synthesized identity "Peter Gollan" as the sole signer on or about April 30, 2020.  An EIDL of approximately $149,900.00, a $10,000 Grant, and a $5 deposit were the only other deposits to the account through October 2020.  "Gollan"

submitted the EIDL Application on or about June 18, 2020. As with the PPP loan, the borrower provided a false number of employees (55) on the EIDL application. Additionally, he provided amounts for gross revenue ($975,000) and cost of goods sold ($340,000) when the business was not in operation. The proceeds were used to fund the following:

> a. Between May and August 2020, multiple checks were made payable to Sonic Werx LLC totaling $1,027,084. The further disposition of these funds is described at the end of the following section with the disposition of funds from the Sonic Werx LLC account number ending 6709. **Felts** was the sole signer on this account.

This shows that **Felts** used more than 40% ($1,027,084 / ($869,230+$150,000+$10,000) = 99.8%) of the EIDL and PPP Loan proceeds for non-payroll expenses, which is related to the loan forgiveness upon its later PPP application in April 2021, as described below.

*Sonic Werx LLC*

107. In or about May 2020, the PPP application for Sonic Werx LLC, was filed by Peter Gollan with Celtic Bank. The application provided the following information:

> a. Business address: "1816 Walnut Str, Kansas City, Missouri 64108"
>
> b. Business phone: 816-537-2110
>
> c. Average payroll: $159,530
>
> d. Loan request: $398,825
>
> e. No. of employees: 22
>
> f. Loan Purpose: Payroll
>
> g. Owner name: Peter Gollan

50

    h.  Owner TIN:        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

    i.  Owner address:      5620 Lexington Circle, Lumberton, Texas 77657

108.    The phone number provided for Sonic Werx LLC, is registered to Phone.com Inc. Subscriber records from Phone.com Inc. show that **Felts** initiated service for this number and phone calls to this number were forwarded to 305-746-2515. Telephone number 305-746-2515 is the same number in the name of **Felts'** deceased grandmother and provided by **Felts** on multiple occasions for loan and account applications under his name.

109.    The borrower submitted Texas driver license number 44816055 for Peter Gollan to Celtic Bank with the same address as above. I verified that this license number belongs to another person being a white female. The Texas DPS does not have record of a Peter Gollan with the same identifiers.

110.    To support the loan request figures, the borrower submitted copies of Forms 941 for all four quarters in 2019 and the first quarter of 2020 with the application. All of the Forms 941 appear to be identical with respect to the number of employees (22) and total quarterly wages ($478,614). This matches the information provided on the application for employees and within a few dollars of the average monthly payroll.

111.    Per IRS records, Sonic Werx LLC, has not filed any Forms 941 for any quarters in 2019 or 2020. Further, MO-DES did not have any Quarterly Contribution and Wage Reports between 2019 and the third quarter of 2021. This would indicate that the company did not have any employees, refuting claims made by the borrower within the PPP loan application.

112.    The loan proceeds of $398,825 were deposited into an account number ending in 6709 in the name of Sonic Werx LLC, at Central Bank of the Ozarks.  As with the Super's Entertainment LLC, account, **Felts** opened this account on or about May 11, 2020, and is the sole signer on the account.  PPP loan proceeds, transfers from the Diagnostic Equipment Inc. account number ending 5674 at Incredible Bank (as mentioned above), a $149,900 EIDL, and a $10,000 Grant were the only deposits made in 2020 to account number ending 6709.  "Gollan" submitted the EIDL Application on or about June 5, 2020.  As with the PPP loan, the borrower provided a false number of employees (22) on the EIDL application.  Additionally, he provided amounts for gross revenue ($867,450) and cost of goods sold ($124,878) when the business was not in operation.  The $10,000 Grant was received based upon the false information provided in the EIDL application. Felts used the proceeds to fund the following:

    a.    On or about May 21, 2020, **Felts** purchased cashier's check number 367128 in the amount of $62,323.75 to "Bright Vanguard";

    b.    On or about May 21, 2020, **Felts** purchased cashier's check number 367129 in the amount of $8,333 to John Felts, which was deposited at Arvest Bank[18];

    c.    On or about June 1, 2020, **Felts** purchased cashier's check number 367318 in the amount of $157,000 to UMB;

        i.    Records from UMB show that **Felts** used this cashier's check to pay Loan 12026639-00401.  This loan was made in March 2019 to **Felts** for the purchase of and secured by a Deed of Trust on Lot Two (2) of

_____

[18]This check was deposited into the account of **Felts'** father at Arvest Bank.

the Replat of Lots 2, 8, 9, and 9A of Jones Spring, a subdivision in Greene County, Missouri. This lot adjoins the **PREMISES** and 1224 South Jones Spring Lane.

d.      On or about June 1, 2020, **Felts** transferred $90,000 to his personal account number ending in 2401 at Central Bank of the Ozarks;

e.      On or about May 26 and June 12, 2020, **Felts** transferred a total of approximately $39,176 to pay off a loan, number ending 2330, secured by a 2018 Cadillac CT6 (VIN: 1G6KB5RS4JU124354). The original loan amount was $50,590. I have personally observed this vehicle at the address of 211 Catskill Road, Walnut Shade, Missouri 65740. The funds used to pay off the loan for this vehicle are attributable to fraud;

f.      On or about May 26 and June 12, 2020, **Felts** transferred a total of approximately $40,778 to pay off a loan, number ending 0264, secured by a 2018 Jeep Wrangler (VIN: 1C4HJXFG6JW143143). The original loan amount was $58,274. The funds used to pay off the loan for this vehicle are attributable to fraud;

i.      On or about July 15, 2020, Kenny Felts registered/titled this 2018 Jeep Wrangler with the Missouri Department of Revenue and submitted a signed affidavit from his brother, **Felts**, that this Jeep was a gift, and no money or other valuable consideration was involved in the transaction.

ii.     On or about July 28, 2020, Kenny Felts purchased a new 2020 Jeep Wrangler (VIN: 1C4HJXFN4LW337736) from Corwin Dodge. On or about April 21, 2022, Kenny Felts registered/titled this 2020 Jeep

53

Wrangler with the Missouri Department of Revenue. Corwin Dodge records show that Kenny Felts traded the 2018 Jeep Wrangler referenced above for this 2020 Jeep Wrangler. The net selling price for the 2020 Jeep Wrangler was $58,385 and the 2018 Jeep Wrangler was given a $37,500 trade-in allowance. **Felts** paid the balance due after the trade-in with a check drawn on Habitat Restaurant Holdings LLC account number ending in 2355 at Central Bank of the Ozarks.

      iii.      On or about April 21, 2022, Kenny Felts purchased a 2021 Subaru Outback (VIN: 4S4BTAFC7M3207427) from Reliable Imports. Kenny Felts registered/titled this 2021 Subaru Outback with the Missouri Department of Revenue at the address of 2325 Acacia Club Road, Hollister, Missouri 65672, a location within the Western District of Missouri. These records show that Kenny Felts traded his 2020 Jeep Wrangler referenced above in exchange for this 2021 Subaru Outback. The net selling price for the 2021 Subaru Outback was $35,400 and the 2020 Jeep Wrangler was given a $44,500 trade-in allowance. Kenny Felts received approximately $9,100 in cash back from this transaction.

      g.      On or about July 17, 2020, **Felts** purchased cashier's check number 368437 in the amount of $5,000 to Hogan Land & Title. This check was a down payment for the purchase of 1224 South Jones Spring Lane;

      h.      On or about August 6, 2020, **Felts** wired $50,000 to United Southern Properties in Gallatin, Tennessee, with reference to "New Office Building Construction Gallatin TN" as the purpose;

i. On or about August 14, 2020, **Felts** purchased cashier's check number 369007 in the amount of $137,500 to Concept Pro LLC;

j. On or about September 22, 2020, **Felts** purchased cashier's check number 369874 in the amount of $228,681.42 to HomeTrust Bank;

    i. HomeTrust Bank filed suit against **Felts** and E-8 Productions LLC in Greene County, Missouri, at the end of 2019 (case number 1931-CC1606). In March of 2020, the court entered a total judgment of $228,681.42 against the defendants in favor of HomeTrust Bank for a loan made in 2018 and secured by computer servers. Records from HomeTrust Bank show that **Felts** used the above PPP proceeds to pay the judgment.

k. On or about October 21, 2020, **Felts** wired $75,000 to United Southern Properties in Gallatin, Tennessee, with reference to "Construction Addition to Property" as the purpose;

l. On or about October 29, 2020, **Felts** wired $75,000 to United Southern Properties in Gallatin, Tennessee with reference to "Construction Addidtion (sic) to Property" as the purpose;

m. On or about November 20, 2020, **Felts** wrote check number 1001 in the amount of $75,000 to himself and deposited it into his personal account number ending 2401 at Central Bank of the Ozarks. On or about November 23, 2020, **Felts** wrote check number 1007 on his account ending 2401 in the amount of $70,000 and payable to Fidelity Title, using these funds;[19]

---

[19]This check funded a construction draw for the **PREMISES**.

Case 6:22-sw-02098-DPR   Document 1-1   Filed 09/01/22   Page 55 of 67

n.   During or about June through September of 2020, **Felts** transferred a total of approximately $79,000 to his personal account number ending in 2401;

o.   During or about July through December of 2020, **Felts** transferred a total of approximately $75,009 to the account of Taco Habitat Branson LLC, number ending in 2894 at Central Bank of the Ozarks;

p.   During or about August and December of 2020, **Felts** transferred a total of approximately $30,000 to the account of Cluck 2 LLC, number ending in 2347, at Central Bank of the Ozarks; and

q.   Through the end of 2020, **Felts** transferred a total of approximately $330,000 to the account of Habitat Restaurant Holdings LLC, number ending in 2355, at Central Bank of the Ozarks. Of these funds, **Felts** used least $109,138.67 to pay Boxman Studios for the construction of Taco Habitat at Glenstone Marketplace on South Glenstone in Springfield, Missouri.

This shows that **Felts** used PPP loan proceeds for personal, non-business-related expenses. Through these transactions, **Felts** layered proceeds through one or more bank accounts. **Felts** then used proceeds to fund the purchase of assets. These transactions demonstrate that probable cause exists to believe that **Felts** also violated 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957 .

*Restaurant Franchise Holdings LLC*

113.   In or about April 2020, the PPP application for Restaurant Franchise Holdings LLC, was filed by "Neil Frasier" with Incredible Bank. The application provided the following information:

a.   Business address:   "1450 E Sunshine #B, Springfield, MO"

56

|    |                   |                   |
|----|-------------------|-------------------|
| b. | Business phone:   | 417-887-7754      |
| c. | Average payroll:  | $148,795          |
| d. | Loan request:     | $371,986          |
| e. | No. of employees: | 18                |
| f. | Loan Purpose:     | Payroll           |
| g. | Owner name:       | Neil Frasier      |
| h. | Owner TIN:        | 365-35-103        |
| i. | Owner address:    | 1819 My Anns Hill, San Antonio, Texas |

114.    The Certificate of Amended Articles of Organization filed by the Missouri SOS for Restaurant Franchise Holdings LLC, was provided to Incredible Bank, which shows that Restaurant Franchise Holdings LLC, was formerly BYOPizza Franchising LLC.  I viewed the filings with the Missouri SOS for Restaurant Franchise Holdings LLC, and any related predecessor entities. The Articles of Organization for BYOPizza Franchising show that **Felts** was the organizer in 2014.  In June 2015, **Felts**, acting as Registered Agent, changed the name from BYOPizza Franchising LLC to Restaurant Franchise Holdings LLC.   **Felts** changed the Registered Agent for Restaurant Franchise Holdings LLC, from himself to another person in April 2017.  Finally, in March 2019, this other person changed the Registered Agent to Neil Frasier at the address for the business address listed above, which is in the immediate vicinity of the Hot Cluckers restaurant operated by **Felts'** wife.

115.    The phone number provided for Restaurant Franchise Holdings LLC, is registered to Phone.com Inc.  Subscriber records from Phone.com Inc., show that **Felts** initiated service for this number through his account registered under email

diversifiedmusic@aol.com. **Felts** forwarded phone calls from this number to 305-746-2515. Telephone number 305-746-2515 is the same number in the name of **Felts'** deceased grandmother and provided by **Felts** on multiple occasions for other loan and account applications under his name.

116.    To support the loan request figures, the borrower submitted copies of Forms 941 for all four quarters in 2019, and the first quarter of 2020 with the application. The Form 941 for first quarter 2020, showed 18 employees and quarterly total wages of $339,051, which were less than the average payroll amount provided for the loan. Incredible Bank approved a PPP loan of $293,400, which was less than the $371,986 requested.

117.    MO-DES does not have any Quarterly Contribution and Wage Reports for Restaurant Franchise Holdings LLC between 2019 and the third quarter of 2021. This would indicate that the company did not have any employees, refuting claims made by the borrower within the PPP loan application.

118.    The address provided for "Neil Frasier" is the home address of Craig Davis, the owner of Bright Vanguard LLC, which has been the recipient of numerous wires sent by **Felts.**

119.    I could not locate identification documents for "Neil Frasier" in the loan file from Incredible Bank for Restaurant Franchise Holdings LLC. However, someone also attempted to apply for multiple PPP loans as the same "Neil Frasier" under another entity, Concept Pro LLC, that were ultimately never granted. As part of these loan applications, "Neil Frasier" provided Texas driver license number 32324318. I verified that this license

58

does not exist, and the Texas DPS does not have any record of "Neil Frasier" with the same date of birth or address listed on the license.

120.    Additionally, "Neil Frasier" signed the loan documents on or about May 1, 2020, from an IP address of 99.45.215.62, which, as discussed above, was registered to **Felts'** wife at the **PREMISES.**

121.    The loan proceeds of $293,400 were deposited into an account ending 5146 in the name of Restaurant Franchise Holdings LLC at Incredible Bank.  "Neil Frasier" opened this account on or about April 29, 2020, and is the sole signer.  "Neil Frasier" electronically signed the signature card using DocuSign which captured 99.45.215.62 as the IP address for "Neil Frasier."  Again, this IP address was registered to **Felts'** wife at the **PREMISES**.  The only other deposits made in 2020 to this account were transfers totaling less than $1,200.  The PPP loan proceeds funded the following:

      a.      On or about May 6, 2020, "Neil Frasier" wired $294,400 to the account of Restaurant Franchise Holdings LLC, number ending in 8283 at Mid-Missouri Bank.  "Neil Frasier" electronically signed the wire instructions using DocuSign which captured 99.45.215.62 as the IP address for "Neil Frasier."  Again, this IP address was registered to **Felts'** wife at the **PREMISES**, which adjoins **Felts'** other residence located at 1224 S. Jones, Springfield, Missouri**. Felts** opened account 8283 and is the sole signer.  Of the funds sent to Restaurant Franchise Holdings LLC, account number ending in 8283, **Felts** used them as follows:

            i.      On or about May 7, 2020, **Felts** purchased cashier's check number 229896 in the amount of $30,000 to **Felts;**

59

ii.        On or about May 7, 2020, **Felts** purchased cashier's check number 229897 in the amount of $30,000 to **Felts;**

iii.        On or about May 13, 2020, **Felts** wired $75,000 to United Southern Properties in Gallatin, Tennessee, and emailed the wire instructions to the bank using diversifiedmusic@aol.com;

iv.        On or about May 18, 2020, **Felts** wired $30,000 to Gold Coast Exotic Imports LLC, a luxury and exotic car dealer in Chicago, Illinois. Gold Cost Exotic Imports LLC records show that this wire was applied to the lease of a 2021 Lamborghini Aventador (VIN:ZHWUN6ZD0MLA10117) by **Felts**;

v.        In May 2020, **Felts** wrote check numbers 103 and 152 totaling $30,000 to himself;

vi.        **Felts** wrote check number 153 dated May 15, 2020, in the amount of $8,500 to Glenstone Marketplace for "May" (presumably for rent for the Taco Habitat GMP LLC location);

vii.        **Felts** wrote check number 154, dated June 2, 2020, in the amount of $18,000 to Taco Habitat for "Mortgage/Payroll Taxes;"

viii.        **Felts** wrote check numbers 155 and 156, totaling $14,401, to Sekutor[20] for "B+B"[21] and "Taco Habitat," respectively; and

---

[20]Sekutor appears to be a security patrol service in Rogersville, Missouri, based on its Facebook page.

[21]I believe this reference is to Felts' other restaurant business, Bourbon & Beale LLC.

ix.     On or about June 22, 2020, **Felts** wired $84,118.68 to United Southern Properties in Gallatin, Tennessee, using the remaining funds in the account, along with part of a $149,900 EIDL from the SBA.

This shows that **Felts** used more than 40% ($293,400 / $293,400 = 100%) of the PPP Loan proceeds for non-payroll expenses, which is related to the loan forgiveness upon its later PPP application in April 2021, as described below.  Further, **Felts** used a part of these monies for personal, non-business-related expenses.  Through these transactions, **Felts** layered proceeds through one or more bank accounts.  **Felts** then used proceeds to fund the purchase of assets.  These transactions demonstrate that probable cause exists to believe that **Felts** also violated 18 U.S.C. §§ 1956(a)(1)(B)(i) or 1957.

**Second Round PPP Applications using Synthesized Identities**

*Diagnostic Equipment Inc.*

122.    In or about April 2021, the second PPP application for Diagnostic Equipment Inc., was filed by "Peter Gollan" with Incredible Bank.  The application provided the following information:

a.      Business address:     "210 W Burnsville Parkway, Burnsville, MN"

b.      Business phone:       952-213-1415

c.      Average payroll:      $421,798

d.      Loan request:         $1,054,495

e.      No. of employees:     55

f.      Loan Purpose:         Payroll

g.      Owner name:           Peter Gollan

h.      Owner address:      5620 Lexington Circle, Lumberton, Texas

123.    To reiterate the facts from the first loan above, **Felts** has ties to Diagnostic Equipment Inc., as these queries originated from the **PREMISES**.

124.    "Peter Gollan" appears to be a synthetic identity used by **Felts**. The instructions to disburse proceeds from the first PPP loan to Diagnostic Equipment Inc., originated from the **PREMISES**. As was referenced above, the Texas driver license for "Peter Gollan" is not valid and the Texas DPS does not have any record of a "Peter Gollan" with the same identifiers listed on the license. This same document was provided for the second PPP loan.

125.    To support the loan request figures, the borrower submitted copies of Forms 941 for all quarters in 2020. The forms show 55 employees, which matches the loan application. However, the highest quarterly total wages of $990,445 were on the first quarter return. This total is less than the amounts provided on the loan application.

126.    Again, per IRS records, Diagnostic Equipment Inc. has not filed any Forms 941 for any quarters in 2019 or 2020. Additionally, Diagnostic Equipment Inc. has not filed any quarterly wage reports for 2017 through 2021 with the MN DEED. This would indicate that the company does not have any employees.

127.    The loan proceeds of $1,054,494.80 were deposited into the Diagnostic Equipment Inc. account number ending in 5674 at Incredible Bank. Someone opened this account in the name of the synthesized identity, "Peter Gollan," on or about April 30, 2020, as the sole signer. The only other deposits in the account through July 2021 were wires from Bright Vanguard LLC which totaled $13,000. The proceeds funded the following:

62

a. Between May and July 2021, multiple checks were written to Sonic Werx LLC, totaling $906,937.42. These checks were deposited into the Sonic Werx LLC, account number ending in 6709 at Central Bank of the Ozarks, which had a balance of less than $7,500 before the proceeds were deposited. This behavior is consistent with the first PPP Loan. There were no deposits from other sources during this time. The further disposition of these funds is as follows:

i. On or about May 6, 2021, **Felts** transferred approximately $40,000 to the Habitat Restaurants Holdings LLC account number ending in 2355 at Central Bank of the Ozarks;

ii. On or about May 20, 2021, **Felts** wired $150,000 to Kansas City Chiefs Football in Kansas City, Missouri, with reference to "Corporate Suite Sponsorship Advertisement" as the purpose;

iii. On or about May 20, 2021, **Felts** transferred approximately $75,000 to the WR Brewery Holdings LLC account number ending in 1347 at Central Bank of the Ozarks;

iv. On or about June 2, 2021, **Felts** wired $93,000 to Hitachi Capital America in Norwalk, Connecticut, with reference to "Pay Off Equipment for Business";

v. On or about June 14, 2021, **Felts** transferred approximately $213,000 to his personal account number ending in 2401 at Central Bank of the Ozarks;

1. On or about June 14, 2021, **Felts** wired approximately $213,000 from his personal account number ending

2401 to MarineMax East in Lake Ozark, Missouri, with reference to "Purchase of New Boat from MarineMax" as the purpose. Per MarineMax records, this wire was combined with other funds and a loan to purchase a 2021 Galeon 470SKY Yacht with Hull Identification Number GLN47015A121 for approximately $1.3 million.

    vi.        On or about July 1, 2021, **Felts** wired $38,000 to Voss LLC, in Geismar, Louisiana, with reference to "Business Consulting" as the purpose;

    vii.        On or about July 13, 2021, **Felts** purchased cashier's check number 375743 in the amount of $30,000 to Fidelity Title;[22]

    viii.        On or about July 26, 2021, **Felts** wired $82,018.44 to Wild Goose Canning Technologies in Louisville, Colorado, with reference to "Purchase canning equipment" as the purpose;

    ix.        On or about July 28, 2020, **Felts** wired $55,353.45 to Putnam Leasing Company LLC, in Greenwich, Connecticut, with reference to "Down payment for entertainment equipment" as the purpose; and

    x.        Between or about July and August 2021, **Felts** transferred approximately $124,500 to the Cluck 2 LLC account number ending in 2347 at Central Bank of the Ozarks. He used these transfers, along with the

---

[22]Fidelity Title is handling construction draws for Felts' residence at the **PREMISES**. This check funded one of these construction draws.

other proceeds already in the account from Cluck 2 LLC's second round PPP loan, to fund the following:

> 1. During or about July and August 2021, Felts made approximately $38,827.89 in payments to Chase Credit Card(s), which paid for credit purchases including $12,180.42 to Goldin Auctions in Runnemede, New Jersey. Records received from Goldin Auctions show that the purchase was for a 1909-1911 Ty Cobb baseball card and a 2015-16 "Trio Autographs" Larry Bird/Magic Johnson/Julius Erving.

This shows that **Felts** used PPP loan proceeds for personal, non-business-related expenses. Through these transactions, **Felts** layered proceeds through one or more bank accounts. **Felts** then used proceeds to fund the purchase of assets. These transactions demonstrate that probable cause exists to believe that **Felts** also violated 18 U.S.C. §§ 1956(a)(1)(B)(i) or 1957.

128. The properties at 1268 South Jones Spring Lane, Springfield, Missouri (**PREMISES**), and 1224 South Jones Spring Lane, Springfield, Missouri, are adjoining lots in the same subdivision. **Felts** purchased the **PREMISES** in 2018, as his primary residence. Based upon observation, construction disbursements, and permits with Greene County, Missouri, the **PREMISES** was subject to an extensive remodel during or about the second half of 2020 and was ongoing in 2021. **Felts** purchased the house next door to the **PREMISES,** 1224 South Jones, Spring Lane, Springfield, Missouri, and I believe that **Felts** used this residence as his temporary residence while the **PREMISES** was undergoing renovations. As was referenced in this affidavit, **Felts** used PPP proceeds to fund several

65

negotiable instruments payable to Concept Pro LLC.  **Felts** deposited these in Concept Pro

LLC's account number ending in 7718 at Systematic Savings Bank.  In July and August of

2020, **Felts** deposited approximately $606,043 in proceeds.  As the sole signer on this

account, **Felts** used these proceeds, when combined with other deposits, to fund cashier's

check number 11377 in the amount of $977,949.56.  Closing records from Hogan Title

show that **Felts** funded the purchase of 1224 S. Jones Spring Lane with cashier's check

11377 and titled the property in the name of GusMavMur LLC.  Hogan Title records

include the Operating Agreement for GusMavMur LLC, which identifies **Felts** and his wife

as the members of GusMavMur LLC.  My belief that the residence located at 1224 South

Jones Spring Lane, Springfield, Missouri, was **Felts'** temporary residence is also supported

by the fact that **Felts** has Internet service at this residence.  Finally, I have observed vehicles

at 1224 South Jones Spring Lane, which appear to match vehicles registered to **Felts** and/or

his wife, such as a Lamborghini SUV and a Ford truck.

129.    The assets sought through this application for a seizure warrant constitute

or are derived from proceeds obtained directly or indirectly from violations of 18 U.S.C.

§ 1014 (making a false statement on a loan document), 18 U.S.C. § 1343 (wire fraud), 18

U.S.C. § 1344 (bank fraud), and 18 U.S.C. § 1349 (conspiracy to commit wire or bank

fraud), or are involved in a transaction or attempted transaction, in violation of 18 U.S.C.

§ 1956 (money laundering) and 18 U.S.C. § 1957 (money laundering), thereby subjecting

such property to seizure and forfeiture pursuant to 18 U.S.C. §§ 981 and 982.

## CONCLUSION

130.    Based upon the evidence set forth herein, I believe there is probable cause

that the assets identified for seizure herein are, in whole or in part, proceeds, or property

traceable to and derived from proceeds, of illegal activity or property involved in or traceable to the alleged violations (18 U.S.C. §§ 1014, 1343, 1344, 1956, and/or 1957) and, further, that a seizure warrant is authorized pursuant to 18 U.S.C. §§ 981(b)(2), 981(b)(1), and/or 21 U.S.C. § 853(f).

131.    Due to the ease with which cars, vehicles, boats, and jewelry may be moved beyond the jurisdiction of this Court and concealed, and further, based on the fact that cars, vehicles, and boats, in particular, quickly diminish in value, seizure is preferable to restraint in this case.    Therefore, I request permission to seize, rather than restrain, the aforementioned assets.

132.    The facts set forth in this affidavit are true and correct to the best of my knowledge and belief.    Wherefore, I request the issuance of the requested warrant.

I declare upon the penalty of perjury that the information contained herein is true and correct to the best of my knowledge.

_Karl Bolte_
_____
Karl Bolte, Special Agent
Internal Revenue Service – Criminal Investigation


Subscribed and sworn to before me by telephone or other reliable electronic means on the _1st_ day of September, 2022.

_David P. Rush_
_____
DAVID P. RUSH
CHIEF UNITED STATES MAGISTRATE JUDGE

67